IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TECHNICAL TESTING <br> INTERNATIONAL LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL <br> PROTECTION AGENCY, et al., <br> Defendants. | § § § § § § § § § § § § Civil Action No. 3:16-CV-3165-B |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated January 25, 2017, before the Court is *Plaintiffs' Motion for Preliminary Injunction with Brief in Support*, filed November 18, 2016 (doc. 4). Based on the relevant filings, evidence, and applicable law, the motion should be **DENIED**.

## I. BACKGROUND

Plaintiff Technical Testing International, LLC (Technical) is a testing environmental laboratory corporation located in Arlington, Texas, which contracts to provide analytical services to engineering and consulting firms at the federal, state, local, and private levels. (doc. 5-13 at 2.)[1] Plaintiff Meera Pabley a/k/a Meera Neb (Meera) is its owner, president, and director, and Plaintiff Hardeep Pabley (Hardeep) is its director and operations manager.[2] (*Id*.) Technical is certified by the United States Environmental Protection Agency's (EPA) National Environmental Laboratory Accreditation Program (NELAP), which requires that laboratories comply with certain standards, such as the requirement that all laboratory records include the signed initials of the analyst or testing

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Technical, Meera and Hardeep are collectively referred to as "Plaintiffs."

machine operator. (*See id.* at 1-3.)

Between 2010 and 2013, Technical received contracts to provide laboratory data to entities that were recipients of EPA grants. (*Id.* at 2-3.) Several of its employees during that time came forward and accused the company of falsifying laboratory test results and failing to properly train laboratory employees.[3] (*See id.*) The EPA's Office of Inspector General investigated the accusations and made a referral to the EPA's Office of Grants and Debarment's Suspension and Debarment Division (Debarment Division). (*Id.* at 4-5.)  On February 25, 2014, EPA investigators met with Meera and Hardeep about the allegations of falsified reports coming from Technical's laboratory. (doc. 21-1 at 39-43.) During that meeting, Plaintiffs acknowledged that Technical's laboratory management system allowed them to affix the initials of analysts on lab reports, which was consistent with the employees' reports.  (*See* doc. 5-13 at 3.)

On December 2, 2014, Plaintiffs met with the EPA's Debarment Division to discuss recent improvements made to Technical's laboratory practices and to submit several documents on the improvements, including affidavits identifying the revised procedures and equipment upgrades. (*See* doc. 21-5 at 14-50.) On March 9, 2015, the Debarment Division considered the evidence from the investigation and recommended in its Action Referral Memorandum that Plaintiffs be debarred from accepting federal contracts and subcontracts for a three-year period. (*See* doc. 5-13 at 1.)

The Debarment Division subsequently issued several Notices of Proposed Debarment with attached copies of the Action Referral Memorandum, sent by certified mail to Hardeep, Meera, and Technical to each one's last known address, and by electronic mail to their designated counsel,

---

[3] Plaintiffs terminated the employment of these individuals before the relevant reports and accusations were made to the EPA. (*See* doc. 5-13 at 2-3.)

Frederick Addison, III. (*See* docs. 21-12 at 34-45, 21-18 at 1-31.) Mr. Addison received the electronic notice on July 8, 2015, and acknowledged that he represented all Plaintiffs. (*See* doc. 21-18 at 29-31.) The notice explained that Plaintiffs' misconduct "constitutes a cause of so serious or compelling a nature as to affect [Technical's] present responsibility." (doc. 5-1 at 1.) It also noted how Plaintiffs could contest the recommended debarment. (*Id*. at 2.)

Plaintiffs responded to the notice and requested a Presentation of Matters in Opposition (PMIO) meeting, which was held on April 6, 2016. (*See* doc. 5-3.) Duc H. Nguyen (Nguyen), in his official capacity as an EPA Suspension and Debarment Official, issued a decision on June 20, 2016, imposing a one-year debarment from receiving any federal contracts or approved subcontracts on Plaintiffs. (*See* doc. 5-13.) They appealed the debarment to the Director of the Office of Grants and Debarment, who issued a decision on October 31, 2016, affirming Nguyen's decision to debar Plaintiffs for one year. (*See* docs. 5-14, 5-15.)

On November 12, 2016, Plaintiffs filed this suit under the Administrative Procedures Act (APA) and the Due Process Clause, alleging that the debarment decision was arbitrary, capricious, contrary to law, and without justification. (doc. 1.) Six days later, they moved for a preliminary injunction seeking to enjoin the EPA and Nguyen (collectively Defendants) from enforcing the debarment and identifying them on "any and all debarment lists or websites." (doc. 4 at 6.) With a timely-filed response and reply, this motion is ripe for recommendation. (docs. 20, 23.)

## II.  PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant must establish that: (1) he is likely to

succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citing *Winter*, 555 U.S. at 19-20). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Assoc., Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). If the movant fails to carry the "heavy burden" to show each of the four prerequisites, a preliminary injunction is not warranted. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

### III. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs seek a preliminary injunction based on their APA and Due Process claims. (doc. 4.) To establish the first element of likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011). The first element is assessed by looking at standards provided by substantive law. *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

**A.   APA**

To establish a likelihood of success on the merits of their APA claim, Plaintiffs argue that the EPA and Nguyen "misapplied the burden of proof" during the administrative proceedings, but even if they applied the proper burden of proof, there was no "basis for a negative inference premised on past conduct" because Plaintiffs submitted probative evidence of their present responsibility. (doc. 4 at 6.)

Judicial review under the APA is limited to "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. Federal courts

4

may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . 'arbitrary, capricious, [in] an abuse of discretion, or otherwise not accordance with law.'" 5 U.S.C. § 706(2)(A); *see Cieutat v. Bowen*, 824 F.2d 348, 352 (5th Cir. 1987). The scope of review is a narrow one, as a court is "not empowered to substitute its judgment for that of the agency." *See Baker v. Bell*, 630 F.2d 1046, 1051-52 (5th Cir. 1980).

When "evaluating agency reasoning," a court must "look to whether [the agency] examined the relevant data and articulated a 'satisfactory explanation for its action including a rational connection between the facts found and the choice made[.]'" *Texas v. E.P.A.*, 690 F.3d 670, 677 (5th Cir. 2012) (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Agency action is "arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the products of agency expertise.'" *Tex. Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43). "In reviewing an agency's decision under the arbitrary and capricious standard, there is a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (citation omitted). The factors to determine whether a party is entitled to injunctive relief for an agency failure to comply with its own regulations applies with equal force under the APA. *See Cuomo v. United States Nuclear Regulatory Com.*, 772 F.2d 972 (D.C. Cir. 1985); *Texas v. United States*, 201 F. Supp. 3d 810, 817-19 (N.D. Tex. 2016).

A Federal agency may debar a person or entity for several reasons, including a conviction under a criminal statute, a civil judgment for fraud, or "[a]ny other cause of so serious or compelling a nature that it affects [their] present responsibility." 2 C.F.R. § 180.800(d). Affiliates of an entity proposed for debarment may also be subject to debarment if they directly or indirectly have the power to control the other, or if the improper conduct occurred in connection with the performance of that owner's/manager's duties. *See* 2 C.F.R. §§ 180.625(b), 180.905, 180.630(a). In a debarment action, the "Federal agency has the burden to prove that a cause for debarment exists," and "[o]nce a cause for debarment is established, . . . [the] respondent [has] the burden of demonstrating to the satisfaction of the debarring official that [he or she is] presently responsible and that debarment is not necessary." 2 C.F.R. § 180.855. The Federal agency "must establish the cause for debarment by a preponderance of the evidence;" however, if "the proposed debarment is based upon a conviction or civil judgment, the standard of proof is met." 2 C.F.R. § 180.850(a)-(b). Preponderance of the evidence means "proof that, compared with information opposing it, leads to the conclusion that the fact at issue is more probably true than not." 2 C.F.R. § 180.990. When making a debarment decision, the "debarring official" may consider mitigating and aggravating factors as identified in the regulations. *See* 2 C.F.R. § 180.860. The purpose of the debarment and suspension system is to "protect the public interest . . . [and] not [to] exclude a person or commodity for the purposes of punishment." 2 C.F.R. § 180.125(a)-(c).

Here, the EPA used the "catch-all" provision, which cites "[a]ny other cause of so serious or compelling a nature that it affects your present responsibility," as the basis for Plaintiffs' debarment. 2 C.F.R. § 180.800(d). Plaintiffs argue that the EPA "misapplied these burden-shifting provisions" because it failed "to prove specific 'affects' regarding 'present responsibility' as part

of the EPA's burden to establish a cause for debarment." (doc. 4 at 16.) They contend that it was "legal error to premise an exclusion requiring a demonstration of present responsibility, on evidence of wholly past conduct, occurring years before the agency exclusion action," and that they were the only ones to provide evidence on the current status of their present responsibility. (*Id.* at 22-25.) Plaintiffs also cite *Inchcape Shipping Servs. Holding Ltd v. United States*, 2014 U.S. Claims LEXIS 1570 (2014), and *Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238 (2001), for the proposition that "stale evidence regarding wholly past conduct is not competent to prove a lack of 'present responsibility.'" (*Id.* at 18-20.)

In the EPA's decision, Nguyen initially noted that the "purpose of debarment is to protect the public interest, not to punish [Plaintiffs]" and that:

> The [EPA] has the burden of establishing the bases or causes for debarment. Even though a cause for debarment may exist, [Nguyen] has discretion in determining whether to impose a debarment based on a consideration of the seriousness of the acts and the mitigating or aggravating factors. Once the government has established the cause for debarment, [Plaintiffs have] the burden to demonstrate persuasively [their] present responsibility. (doc. 5-13 at 4) (citing 2 C.F.R. § 180.125(c), 180.855.)

Nguyen found that the preponderance of the evidence, including the "number of witnesses and former laboratory employees of [Technical, who] provided separate sworn statements attesting that, on different, and multiple occasions, [Hardeep and Meera] falsified or directed the falsification of laboratory test data results and entries on laboratory reports," proved Plaintiffs' misconduct and cause for debarment. (doc. 5-13 at 7.) He also noted that even if the former employees' allegations were untrue, a "preponderance of the evidence in the record also demonstrates that there were improper laboratory practices and procedures utilized at [Technical], and that [Hardeep and Meera] failed to provide adequate training and oversight of [Technical's] employees." (*Id.*) There was also evidence of "unacceptably poor oversight and quality control" and "a lack of proper training." (*Id.*)

7

Nguyen concluded that the "prevalence of improper laboratory procedures, lack of management oversight, and the absence of quality control are serious concerns that call into question [Plaintiffs'] present responsibility." (*Id*. at 8.)

Nguyen also analyzed Plaintiffs' arguments and evidence regarding their present responsibility, including the same argument they make in this suit that "they must be found presently responsible [because] the EPA . . . [is] relying on the same 'stale' evidence of past conduct that . . . is several years old and does not accurately reflect [Technical's] present status." (*Id*. 8-14.) Nguyen explained that the alleged "staleness" of evidence did not inherently preclude debarment, and he specifically differentiated the *Inchcape* and *Lion Raisins* cases as being based upon a different type of regulation with elements that are not identical to those in the regulation in this case. (*Id*.) He did note that Plaintiffs' changes and updates to their laboratory procedures and polices were a significant mitigating factor, but there "remain[ed] indications that not [all changes and efforts were] complete" and that more time was needed to fully implement the corrective measures. (*Id*. at 12-13.) He also noted several aggravating factors, including the potential harm of false laboratory data, the extent of the improper conduct over time, and the managerial positions held by persons involved with the improper conduct. (*Id*. at 15.) He ultimately concluded that a reduced debarment period of one year, as opposed to the recommended three years, was appropriate due to the "substantial corrective measures" Plaintiff initiated. (*Id*.)

Plaintiffs subsequently appealed the decision to the Director of the EPA Office of Grants and Debarment (Director) by identifying the same errors alleged in this suit, namely that Nguyen misapplied the relevant burden of proof and erred by relying on "stale" evidence. (doc. 5-16.) The Director affirmed the debarment in an extensive decision explaining that Plaintiffs were not entitled

to a stay of their debarment because there were no evidentiary submissions that contradicted the factual allegations made by Technical's former employees, and because "general denials unaccompanied by evidence . . . are insufficient to establish a genuine dispute of material fact." (*Id*. at 5) (citations omitted). The Director considered each of Plaintiffs' arguments in depth and concluded that Nguyen did not misinterpret the burden on the EPA during the debarment proceedings and did not err by relying on "stale" evidence as the basis for the debarment. (*See id*. at 1.) He additionally considered the applicability of the *Lion Raisins* and *Inchape* cases and explained that they occurred under different regulatory standards and "do not preclude [Plaintiffs'] debarment on the grounds that their misconduct is 'too stale' as a matter of law." (*Id*. at 13-16.) He explained that the "staleness" of evidence showing improper conduct under the relevant regulations is instead properly weighed as a mitigating factor for debarment, which Nguyen did indeed properly consider when imposing only a one-year debarment instead of the recommended three-year debarment. (*Id*. at 16.)

Both the initial EPA decision that imposed the debarment and the subsequent appellate decision affirming it show a thorough analysis and consideration of the issues that Plaintiffs bring in this suit. Both decisions identified and discussed the proper standard of proof under the regulations, the effect of "stale evidence" during debarment proceedings, and appropriately addressed the cases that Plaintiffs rely upon here. (*See* docs. 5-13, 5-16.) Nguyen specifically found in accordance with the regulations that the "prevalence of improper laboratory procedures, lack of management oversight, and the absence of quality control are serious concerns that call into question [Plaintiffs'] present responsibility." (doc. 5-13 at 8.) Based upon the EPA's decision and record of the proceedings, Plaintiffs have not demonstrated that the EPA acted in a manner that was arbitrary,

9

capricious, contrary to law, or without justification when it considered the relevant facts, evidence, case law, and arguments. *See Robinson v. Cheney*, 876 F.2d 152, 160 (D.C. Cir. 1989) (explaining that if "the record contains evidence that, standing alone, indicates to the officer that improper conduct more likely than not occurred, and no evidence to the contrary is available, [a reviewing court] cannot deem it arbitrary to the officer to conclude that the alleged conduct did not occur"); *see Burke v. E.P.A*, 127 127 F. Supp. 2d 235, 239 (D.D.C. 2001); *see Uzelmeier v. U.S. Dept. of Health & Human Services*, 541 F. Supp. 2d 241 (D.D.C. 2008).[4] It appears that the EPA examined the relevant data and offered a rational connection between the facts and choices made, namely that Plaintiffs' conduct was of so serious a nature that it affected their present responsibility and should result in a one-year debarment.

At this preliminary injunction stage, Plaintiffs have not made a clear showing or prima facie case that Defendants failed to act in accordance with the law, committed a legal error, or improperly interpreted the relevant regulations and case law during the proceedings. To the extent that they ask the Court to re-weigh conflicting evidence and testimony, that is improper under the scope of review of an APA action. *See Baker*, 630 F.2d at 1051-52. Accordingly, Plaintiffs fail to meet their burden to show a likelihood of success on the merits of their APA claim.

**B.     Procedural Due Process**

To establish a likelihood of success on the merits of their Due Process claim, Plaintiffs argue

---

[4] The *Uzelmeier* case presented a very similar fact pattern where the plaintiff argued that there was "insufficient evidence" of her present responsibility because the agency did not initiate proceedings until nearly seven years after the misconduct occurred. *See* 541 F. Supp. 2d at 247-49. The D.C. District Court found that plaintiff "had not demonstrated that the ALJ's rejection of her timeliness argument was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Id.* at 249. Plaintiffs contend that *Uzelmeier* was "erroneously decided," but provide no authority for this contention besides their own interpretation of what the "plain language" of the statute requires. (doc. 4 at 21-22.)

10

that Hardeep and Meera "did not receive proper notice of the proposed debarment, as required by the pertinent regulations" because they were not individually identified as the "targets" of the debarment.[5] (doc. 4 at 6.)

Due process requires the government to provide parties with notice that is reasonably calculated to apprise all interested parties of actions affecting their interests. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see Armendariz-Mata v. U.S. Dept. of Justice, Drug Enf't Admin.*, 82 F.3d 679, 683 (5th Cir. 1996). When government action will directly affect a person's liberty or property interests, the government is required to ensure that those individuals whose interests are at stake are afforded sufficient notice. *See Echavarria v. Pitts*, 641 F.3d 92, 94 (5th Cir. 2011).

The EPA has adopted regulations at 2 C.F.R. §§ 180.805 & 180.615 setting forth notice requirements that are consistent with due process. Once a "debarring official" proposes to debar an individual or entity, the official sends a Notice of Proposed Debarment that must include: the reasons for the debarment "in terms sufficient to put you on notice of the conduct or transactions upon which the proposed debarment is based;" the procedures of the debarment proceedings; and information about "the governmentwide effect of a debarment from procurement and nonprocurement programs and activities." 2 C.F.R. § 180.805(a)-(e). Notice is effective if the "debarring official sends a written notice to the last known street address, facsimile number, or e-mail address of [the respondents or his] identified counsel or [the respondent's] agent for service

---

[5] In a footnote of their reply, Plaintiffs also claim that their "fair notice" claim "is premised on Defendants' attempt to apply § 180.800(d) in a manner that contradicts its plain language" because "no debarment target can have 'fair notice" of an arbitrarily applied enforcement provision." (doc. 23 at 11 n.6.) As noted in the previous section, Plaintiffs have failed to meet their burden to show a likelihood of success on the merits that the debarment was arbitrarily applied or enforced against them. As such, they have also failed to meet their burden to show that injunctive relief is proper based upon this "fair notice" claim.

of process." 2 C.F.R. § 180.615(a)-(b).

Here, Plaintiffs provide as evidence a single notice of debarment addressed to Technical and Hardeep, who is identified as the President of Technical. (doc. 5-1.) They contend that this notice "never states the EPA is considering the debarment of [Hardeep and Meera] individually" and was insufficient to provide them with notice of the potential debarment. (doc. 4 at 26.) Defendants, in response, provide evidence of several other notices sent to all three Plaintiffs. (*See* docs. 21-12 at 34-45, 21-18 at 29-31.) The EPA first sent three separate notices to Hardeep, Meera, and Technical via certified mail to each one's last known address that identified them individually and stated that the EPA's Debarment Division "has requested that [Nguyen] debar you from participating in future federal contracts." (doc. 21-12 at 38, 42.) The agency then sent an electronic notice via e-mail to Plaintiffs' identified counsel, who confirmed receipt of the electronic notice and also acknowledged that he represented all three Plaintiffs. (*See* doc. 21-18 at 1-31.) Each notice included the Action Referral Memo that specifically recommended that all three Plaintiffs be debarred. (*See* docs. 21-12 at 34-45, 21-18 at 1-31.)

Plaintiffs do not object to or deny that these other notices were properly sent, and their counsel never raised any objections during the administrative proceedings that they had not been properly notified of the proposed debarment.[6] Because the evidence shows that Plaintiffs received proper notice under the debarment regulations, they have failed to show a likelihood of success on

---

[6] Even if Defendants' evidence did not show that Hardeep or Meera received actual notice of their proposed debarments, the failure to raise the notice claim administratively to provide the EPA with an opportunity to correct any purported error appears fatal to Plaintiffs' assertion that the debarment must be overturned due to improper notice. *See generally, McKart v. United States*, 395 U.S. 185, 194-95 (1969); *Bhd. of R.R. Trainmen v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 380 F.2d 605, 608 (D.C. Cir. 1967) ("Procedural objections to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be; such contentions cannot first be made on appeal.")

the merits for their Due Process claim.[7]

Because Plaintiffs have not shown a likelihood of success on the merits of their APA or Due Process claims, they have not made a clear showing justifying the extraordinary relief they request.[8] *See Winter*, 555 U.S. at 23 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (noting that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

### IV. RECOMMENDATION

Plaintiffs' motion for preliminary injunction should be **DENIED**.

**SO RECOMMENDED** on this 21st day of July, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] In a footnote to their motion, Plaintiffs appear to argue that Defendants further violated the Due Process Clause by failing to inform them of their involvement in a "covered transaction." (doc. 4 at 25 n.12.) To the extent that Plaintiffs assert this claim as the basis for the injunction, they fail to meet their burden to show a likelihood of success on the merits because Plaintiffs have not shown the existence of a legal requirement that, before the government may debar an entity under 2 C.F.R. § 180.800(d), the entity must be aware that it is participating, or did participate, in a covered transaction. *See* 2 C.F.R. §§ 180.800(d), 180.850, and 180.855.

[8] Because Plaintiffs failed to meet their burden on the first prerequisite, it is not necessary to consider the remaining three requirements for entitlement to a preliminary injunction.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE